952 F.2d 406
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
James B. JOHNSON, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 87-6693.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 7, 1991.
Decided Dec. 23, 1991.
 
 Before FLETCHER, D.W. NELSON and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 James B. Johnson brought suit against the United States under the Federal Torts Claims Act (FTCA) and the United States Constitution. The district court granted summary judgment in favor of the government. Johnson then brought a motion to vacate the order under F.R.C.P. 60(b), which the district court denied. On appeal, Johnson argues that the district court erred in denying his 60(b) motion, and also alleges, for the first time, that the United States has committed "fraud on the court" by keeping evidence from the court, submitting perjured testimony, and communicating ex parte with the court. We affirm the district court's denial of Johnson's 60(b) motion. We hold further that Johnson's allegations of "fraud on the court" are without merit.
 
 
 3
 * Johnson, a clinical psychologist, provided mental health care services to Navy personnel at the Long Beach Naval Station (LBNS) from 1967 to 1982. Navy personnel treated by Johnson submitted claims for treatment through the Civilian Health and Medical Program of the Uniform Services (CHAMPUS).[1] In 1977, CHAMPUS issued regulations requiring that qualified providers have Ph.D.s. Although Johnson does not have a Ph.D., he did not interrupt his practice in the face of the new regulations.
 
 
 4
 In 1982, pursuant to a complaint from a patient, LBNS officials launched an investigation into Johnson's billing and claim reimbursement practices. Two weeks after the start of the investigation, the LBNS commander, Captain Cornell, concluded that Johnson was engaging in fraudulent billing practices and issued a letter summarily banning Johnson from the LBNS for three years. Cornell circulated copies of this letter to regional military ombudsmen, as well as to a representative of the City of Long Beach.
 
 
 5
 Johnson filed suit in the district court. He claimed, in essence, that the government, by conducting its investigation as it did, violated his constitutional rights and committed a number of torts--such as invading his privacy and intentionally inflicting emotional distress--for which it was liable under the FTCA. The district court granted summary judgment for the government, on the ground that Johnson's causes of action were either barred by sovereign immunity or were exempted from the FTCA. The district court also denied Johnson's subsequent 60(b) motion to vacate the judgment.
 
 II
 A. RULE 60(B) MOTION
 1. Standard of Review
 
 6
 This court reviews a district court's denial of a 60(b) motion for abuse of discretion. Thompson v. Housing Authority of the City of Los Angeles, 782 F.2d 829, 832 (9th Cir.1986).
 
 2. Discussion
 
 7
 Johnson challenges the district court's denial of his 60(b) motion for the following reasons: 1) the Magistrate provided him with a copy of its initial recommendation but not its final report, thereby violating 28 U.S.C. § 636(b)(1) and affecting his ability to present his case, 2) newly discovered evidence warrants a reopening of the trial, and 3) disputed issues of material fact preclude a finding of summary judgment.
 
 
 8
 After reviewing the record, we find that Johnson has not introduced any new evidence that would bear on the merits of his claims. As the district court held, most of Johnson's actions against the government are barred. Therefore, any alleged new evidence relating to these claims does not facilitate his ability to bring or prove these claims. Moreover, we reject Johnson's contention that there are genuine issues of material fact that justify reversing the district court's denial of the motion. Our review of the record simply does not support that view.
 
 
 9
 Finally, although Johnson did not have the opportunity to review the Magistrate's final report, he had ample opportunity to present his legal arguments and object to the government's position. We do not think that a violation of 28 U.S.C. § 636(b)(1) is per se reason to grant 60(b) relief. After its initial recommendation, the Magistrate elected to treat the government's Motion for Judgment on the Pleadings as a Motion for Summary Judgment. At that time, both Johnson and the government filed additional submissions, as well as opposition and reply papers to each other's submissions. Johnson has not made a single legal argument before this court or in his 60(b) motion that he did not make before the Magistrate. We have already noted that he has brought no new relevant facts to light. Finally, the district judge explicitly stated in his order that he had independently reviewed the entire record before adopting the recommendations. Under the circumstances, we cannot say that the district court abused its discretion in denying Johnson's 60(b) motion.
 
 
 10
 B. "FRAUD ON THE COURT"
 
 
 11
 Johnson alleges on appeal[2] that he is entitled to a new trial because the government has committed fraud on the court by 1) submitting perjured testimony to the court, 2) keeping from the court a letter from a CHAMPUS claims processor stating that Johnson was a qualified CHAMPUS provider prior to 1971, and 3) communicating with the judge ex parte.
 
 
 12
 The alleged perjured testimony consists of the declaration of Charles Carpenter, the government agent responsible for conducting the Johnson investigation. In his declaration, Carpenter claims that he utilized a printout of Johnson's CHAMPUS billings generated in August 1982, and that Johnson was "never a qualified CHAMPUS provider." Johnson has obtained a CHAMPUS printout generated in May of 1982, and claims that this was the one Carpenter utilized.
 
 
 13
 We fail to see how the mere existence of an earlier printout negates Carpenter's testimony that he used the second printout. We also fail to see the significance of a claims processor's statement that Johnson was a qualified provider prior to 1971--it is undisputed that Johnson lost his status as a qualified provider in 1977. Nothing here indicates that important information was kept from the district court.
 
 
 14
 Finally, the "ex parte communication" that Johnson refers to is nothing more than a memorandum to the district court judge from one of his own law clerks. Under the circumstances, the government has not, as a matter of law, committed "fraud upon the court."
 
 III
 
 15
 The record and pleadings fail to demonstrate any basis from which we can conclude that the district court should have granted Johnson's 60(b) motion. The government has not perpetrated "fraud on the court." For these reasons, the district court's denial of Johnson's rule 60(b) motion, is
 
 
 16
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Johnson has been involved in several other suits stemming from this relationship. These cases have all been resolved against him and in favor of the United States
 
 
 [2]
 Johnson also argues, for the first time, that the government has committed a tort by negligently failing to supervise Blue Shield of California, the entity responsible for generating the allegedly faulty May 1982 CHAMPUS printout. Johnson cannot raise a claim before this court that he has not raised before the district court